RIGANO LLC *Attorneys at Law*

Nicholas C. Rigano
NRigano@riganollc.com

534 Broad Hollow Road, Suite 100
Melville, New York 11747
tel: 631.756.5900
**www.riganollc.com**

October 29, 2026

**By ECF**
Hon. Joan M. Azrack, United States District Judge
United States District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**Re: *Heliflite Shares, LLC v. Town of East Hampton*, *et al.*, No. 2:26-cv-06936 (JMA) (SIL)**

Dear Judge Azrack:

This firm represents defendants Town of East Hampton, Town Board of the Town of East Hampton, and Kathee Burke-Gonzalez, sued in her official capacity as Town Supervisor (together, the "Town"). We oppose the application of plaintiff Heliflite Shares, LLC ("Heliflite") for a temporary restraining order stopping the Suffolk County Sheriff (a non-party) from executing a state-court eviction warrant at a Town-owned hangar at East Hampton Town Airport (the "Airport") formerly leased to Long Island Airline, LLC ("LIA").

After numerous interim restraints and consideration of this landlord-tenant dispute by seven state courts over five years, each of which ultimately ruled for the Town, Heliflite moves before this Court for the first time. (Ex. 1.)[1] The application should be denied.

**1. LIA is not a fixed-base operator**

Heliflite's requested relief rises and falls with LIA's purported status as a fixed-base operator ("FBO") of the Airport. LIA, though, has not operated for years.

On April 19, 2022, the New York State Supreme Court found that (i) LIA is a "shell," (ii) LIA's "only asset is the lease," (iii) Sound Aircraft Services, Inc. ("Sound"), the Airport's true FBO, "purchased all of the equipment [LIA] had owned at the hang[a]r" in 2018, the same year LIA's principals died, and (iv) critically, LIA "does not have the ability to operate out of the hang[a]r." (Ex. 1 at 4, 5.) The lease, LIA's only asset, was validly terminated in 2024. (Ex. 2; Ex. 1 at 10, 12-16, 25-26, 28.) The eviction will, therefore, remove no FBO and no services.

Notwithstanding the foregoing, Heliflite's papers self-servingly call LIA the terminal's "operator" and say the eviction would end "LIA's services." (Compl. ¶¶ 1, 23, 26; Carlson Decl. ¶¶ 11, 41, 45, 51.) Heliflite's declarant recites the April 19, 2022 order but omits the foregoing findings (Carlson Decl. ¶ 27). The only operator in the hangar is Heliflite, which pleads that it occupies it as LIA's "subtenant" (Compl. ¶ 23). But LIA's now-terminated lease required Town

[1] Heliflite's counsel declares that "[n]o prior application for the relief sought herein has been made to this or any other court." (Mastro Decl. ¶ 2.) Heliflite, though, obtained a stay from Supreme Court that "protected HeliFlite's continued occupancy," which Supreme Court vacated on September 24, 2026.

Board approval of all subtenants, and no such approval was given for Heliflite. (Ex. 4 at 7-8; Ex. 3; Ex. 8.) What Heliflite calls an access restriction is the end of its unauthorized occupancy.

That is not a "noise or access restriction" under the Airport Noise and Capacity Act ("ANCA"). It is a landlord-tenant dispute adjudicated in state court (*see* Ex. 1). On Heliflite's unsupported theory, no airport could recover space from a defaulting tenant, or let a lease expire, without rigorous ANCA compliance. *See* 14 C.F.R. § 161.5. Indeed, Heliflite concedes that the runway will remain open and that it can still land at the Airport (Compl. ¶¶ 41, 45). The Town's nighttime curfew, which has nothing to do with LIA's eviction, is voluntary, as Heliflite's own declarant acknowledges (Carlson Decl. ¶ 39). Nor is the Town "downsizing" the Airport (Compl. ¶ 1). Of sixty-two hangar tenants, LIA is the only one facing eviction, and, in 2024, the Town renewed two other hangar leases for ten (10) more years. (Ex. 1 at 24-25; Ex. 7 at 1, 6.) Heliflite points to no Town decision about the future use of the hangar or ramp, only speculation (Compl. ¶¶ 28, 48).

Heliflite's cases involved local laws restricting airport use, not a judgment of possession against a shell. *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 141 (2d Cir. 2016) (curfew and trip limit); *Delux Public Charter, LLC v. County of Westchester*, No. 24-1895-cv (2d Cir. Aug. 26, 2025) (summary order) (county code moving charter passengers to main terminal). While its second claim against Town Code § 75-12's long-standing engines-off boarding rule is irrelevant to the eviction, the FAA, consistent with the Town's rule, announced its disfavor of "hot" loading. FAA Advisory Circular 91-32B ¶ 7c (June 2, 1997) (turnaround with rotors turning is "generally not recommended due to safety concerns").

**2. The Anti-Injunction Act bars the order Heliflite seeks**

The Act forbids a federal injunction "to stay proceedings in a State court," 28 U.S.C. § 2283, including "an execution issued on a judgment," *Hill v. Martin*, 296 U.S. 393, 403 (1935) (construing predecessor statute). Heliflite admits that the warrant's execution "threatens removal of HeliFlite" (Compl. ¶ 38), its declarant calls it "HeliFlite's eviction" (Carlson Decl. ¶ 52), and its counsel says the order is needed because the Town "declined to forbear from executing the warrant" (Mastro Decl. ¶ 3).

Heliflite's memorandum never mentions the Act. It says only that Heliflite was not a party to the eviction (Pl. Mem. 23), but the case it cites holds that "[u]nless respondents were such 'strangers,' the injunction they sought was barred by the Act." *County of Imperial v. Munoz*, 449 U.S. 54, 60 (1980). The Act "governs a privy," *Hill*, 296 U.S. at 403, and Heliflite is LIA's adjudicated privy (Ex. 1 at 28) and self-described "subtenant" (Compl. ¶ 23). Nor does preemption supply an exception. A federal court may not enjoin state proceedings "merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 294-95 (1970).

Neither Heliflite nor LIA is without a state-court remedy. Heliflite's deadline to appeal the Supreme Court's October 15, 2026 judgment has not expired, and the Appellate Division may

grant interim relief. CPLR 5513(a), 5518. LIA's pending appeal from the Justice Court's final judgment is fully briefed, which refused to stay the warrant and dismissed only LIA's separate appeal. (Ex. 1 at 22.) Any doubt must be "resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line*, 398 U.S. at 297.

**3. Collateral estoppel precludes the requested relief**

Heliflite's article 78 petition attacked the same termination and eviction as an unlawful effort to bring about the "closure of the hangar" (Ex. 6 ¶ 67) and to "limit access to and use of the Airport" (*id.* ¶ 69). The Supreme Court dismissed the action. (Ex. 1 at 23-29.) Heliflite is collaterally estopped from relitigating what Supreme Court decided: that the lease was validly terminated and that Heliflite's claimed interest "derives entirely from LIA's lease." (Ex. 1 at 28.) *See Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349-51 (1999). The Supreme Court's judgment is preclusive pending appeal, *Anonymous v. Dobbs Ferry Union Free Sch. Dist.*, 19 A.D.3d 522, 522 (2d Dep't 2005), and to the extent Heliflite seeks to undo it, *Rooker-Feldman* applies even though Heliflite's time to appeal has not run, *T.M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. 668, 686 (2026).

**4. Heliflite cannot show irreparable harm, and the equities favor the Town**

As the Second Department recently held, "potential loss of the plaintiff's interest in the premises, a commercial property, does not constitute an irreparable harm." *Heung Man Lau v. S. Brooklyn Ry. Co.*, 2026 N.Y. Slip Op. 03434, at *2 (2d Dep't June 3, 2026). And Heliflite's property interest here is an unauthorized subtenancy as discussed above. Further, Heliflite's projected losses are 2027 revenue (Compl. ¶ 52), which money can remedy. *See Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995). By Heliflite's own figures, the stakes of interim relief are limited: 87 to 89 percent of its Airport flying occurs from May through September (Compl. ¶ 24), meaning any interim relief would cover the off-season, and the lease would have ended by February 2027, long before the next summer season begins. (Ex. 1 at 6; Ex. 4 at 1, 30.)

Heliflite's emergency is self-made: the warrant issued in August 2025, the Supreme Court's stay was vacated on September 24, the Sheriff served notice on October 14, yet Heliflite waited to sue on the eviction date. (Compl. ¶¶ 38-40; Ex. 1 at 14.) *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). The timing is no coincidence. Heliflite waited for its article 78 to be adjudicated before suing here to get its second bite.

On the other hand, this dispute has been subject to five restraints, before seven courts, and has resulted in state courts ultimately awarding the Town possession of its own property after its "shell" tenant committed an incurable material breach, while Heliflite has continued to occupy Town property without authority (Ex. 1). The 35-day cure-and-surrender process has taken five years. (Ex. 4 at 20-21, §§ 25.C, 26.A.) The Town has not denied Heliflite's FBO request, which Heliflite calls "independent" of the litigation, and has invited a full proposal (Ex. 5 at 1; Ex. 8).

Accordingly, the Town respectfully requests that the Court deny the application. We thank the Court for its attention to this matter.

Respectfully submitted,

*Nicholas C. Rigano*
Nicholas C. Rigano

cc: counsel of record via ECF