# EXHIBIT 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-----------------------------------------------------------------X

| | |
|---|---|
| In the Matter of the Application of<br><br>HELIFLITE SHARES L.L.C.,<br><br>Petitioner,<br><br>-against-<br><br>TOWN OF EAST HAMPTON and TOWN BOARD OF THE TOWN OF EAST HAMPTON,<br><br>Respondents.<br><br>For Judgment Pursuant to Article 78 of the Civil Practice Law and Rules | **Index No.:**<br><br>**VERIFIED ARTICLE 78 PETITION** |

-----------------------------------------------------------------X

Petitioner, HELIFLITE SHARES L.L.C ("Petitioner" or "HeliFlite"), by its attorneys, Campolo, Middleton & McCormick, LLP, as and for its Verified Petition ("Petition") against Respondents, TOWN OF EAST HAMPTON ("Town") and TOWN BOARD OF THE TOWN OF EAST HAMPTON ("Town Board") (the Town and Town Board are collectively referred to as "Respondents"), respectfully alleges:

**NATURE OF PROCEEDING**

1. This is an Article 78 Proceeding seeking to annul, vacate, and set aside the Town Board of The Town of East Hampton's ("Town Board") Resolution RES-2024-196, Resolution Regarding Termination of Lease with Long Island Airlines LLC ("Resolution"), adopted on January 23, 2024, which authorized the termination of a written commercial lease for a Long Island Airlines, LLC ("LIA"), a Fixed Base Operator (FBO) that provides a private hangar and general aviation services to residents and transient aircraft, including HeliFlite.

2. HeliFlite is compelled to bring this proceeding to ensure it can continue providing aviation services to its east end clients as it has done for the last twenty years. Although there is an underlying dispute between the Town and LIA, HeliFlite merely seeks to continue operations out of this FBO to avoid any interruptions to its business and to provide a safe and secure setting for its clients out of a private hangar. So long as there is assurance that an alternative FBO will overtake the private hangar, HeliFlite's concerns will assuaged, but those assurances have not been provided, and instead the Town is creating a de facto monopoly that may curtail air traffic based on ground support the single remaining FBO at the Airport maintains.

3. The storied history of the Town's unlawful actions are told across multiple litigations, which prohibited the Town from taking certain actions to reduce noise and limit access to the Town of East Hampton Airport ("Airport"): *Friends of E. Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 137-38 (2d Cir. 2016) (holding various laws enacted to reduce noise and air traffic were unlawful); *Matter of E. End Hangars, Inc. v Town of E. Hampton*, Supreme Court, Suffolk County, Index Nos.: 602799/2022, 602801/2022, 602802/2022 (granting petitions to enjoin and restrain the Town from deactivating or closing the airport); *Matter of E. End Hangars, Inc. v Town of E. Hampton, NY*, 2024 NY Slip Op 01708, *2 (2024) (affirming Supreme Court's reasoning for enjoining the Town from deactivating or closing the Airport).

4. As discussed in further detail below, the actions authorized by the Resolution are a continuation of the Town's unrelenting and unlawful efforts to reduce air traffic at the Airport in violation of Court orders (and Federal law) that specifically prohibit the Town from shutting down or deactivating the Airport.

5. The effect of the Resolution will result in the termination of an FBO at the Airport that operates out of a unique private hangar. The actions authorized by the Resolution effectively

shut down the private hangar because without LIA, the sole FBO for that private hangar at the Airport, the operations of aircraft service providers, such as HeliFlite, will be significantly and adversely impacted.

6. As has been the theme, the actions authorized in the Resolution satiate the Town's goal of reducing air traffic and limiting use of the Airport, but it comes at the cost of violating the law and existing Court orders.

## PARTIES

7. HeliFlite Shares L.L.C. is a limited liability company duly organized under the laws of the State of Delaware and authorized to conduct business in the State of New York.

8. HeliFlite is a company that provides executive helicopter transportation, serving the Northeast, South Florida, and destinations along the eastern seaboard.

9. HeliFlite has been providing helicopter service into and out of the Airport since 2000.

10. HeliFlite utilizes a private hangar at the Airport in which LIA is the FBO. If LIA—the FBO of that private hangar at the Airport—is shut down, HeliFlite will be irreparably harmed because it will be subject to sudden and unanticipated business interruptions. The timing is critical because the Airport is at its busiest time of year between May and September. The termination of LIA as the sole FBO of the private hangar during the busiest part of the season may unduly restrict air traffic to and from the Airport.

11. Upon information and belief, Respondent Town is a duly organized municipal corporation of the State of New York, located within Suffolk County, New York.

12. Upon information and belief, the Town owns and sponsors the Airport.

13. Upon information and belief, the Town Board is duly constituted and is "vested with all the powers of the Town pursuant to Section 60 of the Town Law.

## STATEMENT OF FACTS

### A. For nearly 90 years, the East Hampton Airport has been open to the public for commercial and private use

14. The Airport has operated as a public facility serving both commercial and private operators since it opened in 1937.

15. In 1942, the Town effectuated an agreement with the federal government to fund and construct an expansion and overhaul of the Airport, which necessitated the "securing of additional lands" so that the "runways would be changed."

16. Pursuant to the 1942 agreement, the Town agreed that the Airport would "at all times be operated for the use and benefit of the public, on reasonable terms and without unjust discrimination, and without grant or exercise of any exclusive right for use." The Town agreed to abide by this commitment for the "useful life of the improvements made under the Project."

17. In later years, the Airport received additional federal funding from time to time from the Federal Aviation Administration ("FAA"). The latest was in September 2001, when the FAA issued a grant of $1.4 million to the Town to rehabilitate and repave the Airport's terminal apron. Accepting this FAA grant contractually obligated the Town to abide by certain "Grant Assurances" that apply to all FAA grantees. These Grant Assurances included prohibitions on the Town imposing operating restrictions on parties seeking to use the Airport or engaging in economic discrimination against particular operators, including the unreasonable restriction of "commercial aeronautical activities," for at least 20 years following the date of the grant.

18. FAA grants have been issued with the expectation that the Town and Town Board would pledge to "at all times" operate the Airport "as a municipal airport for the public benefit, without unjust discrimination against or in favor of any airport operator."

19. The Grant Assurance prohibiting the granting of exclusive use rights to certain commercial operators applies in perpetuity.

20. Thus, the Town was obligated to preserve the Airport "for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities." *Friends of E. Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 137-38 (2d Cir. 2016).

**B. HeliFlite Contracts with Fixed Based Operators**

21. HeliFlite contracts with various Fixed Base Operators ("FBOs") to provide air transportation services to customers.

22. As defined by the U.S. Department of Transportation, Federal Aviation Administration, an FBO is "a commercial business granted the right by the airport sponsor to operate on an airport and provide aeronautical services, such as fueling, hangaring, tie-down and parking, aircraft rental, aircraft maintenance, flight instruction, etc."

23. LIA is a FBO that operates out of the Airport and provides FBO services to HeliFlite in a private hangar at the Airport.

24. Since 2000, HeliFlite has been providing passenger service into and out of the Airport.

25. Since 2002, LIA has been providing FBO service to HeliFlite at the Airport.

26. LIA has become the preferred FBO to HeliFlite at the Airport.

27. If LIA's operations are terminated, it may have a material adverse impact on the business of HeliFlite.

28. To date, HeliFlite flies in and out of the Airport regularly.

**C. LIA's Lease reaffirm the purpose of the airport is to benefit the public**

29. According to public filings, LIA, as tenant, leases certain hangar space from the Town, as landlord ("Lease").

30. The space from which LIA operates as an FBO is a private hangar, which is uniquely situated and provides discrete, safe, and secure entry and exit to and from the Airport.

31. According to public filings, paragraph 5 of the Lease states its purpose:

> The parties hereto acknowledge that ***the TOWN is a municipal corporation operating a municipal airport for the benefit of the general public.*** The TOWN desires to further the general operation of the airport by lease of the subject premises for appropriate aeronautical purposes.

32. According to public filings, paragraph 6 of the Lease states the use:

> The premises are leased for the following purposes:
>
> "Aircraft Maintenance, Avionics Sales and Repair, Aircraft Rental, Aircraft Storage, Flight Instruction, Aircraft Tie-down, Aircraft Management, Aircraft Sales, and sales [sic] Aircraft Fuel, together with the operation of year-round charter service and auto rental."

33. Consistent with the purpose and use authorized by the Lease, LIA has provided FBO services to HeliFlite for approximately 20 years.

**D. The Town's previous attempts to shutdown or limit access to the airport through legislation has been thwarted**

34. Despite widespread support for keeping the Airport open and operating, the Town has yielded to a small minority of well-funded residents engaged in a NIMBY ("Not In My Backyard") campaign to close the Airport or, at a minimum, close it to commercial traffic.

35. In April 2015—six years before certain of the FAA Grant Assurances were set to expire—the Town enacted multiple local laws designed to impose a mandatory curfew for all air operations, an extended curfew for "noisy aircraft" (which included all helicopters), and a one-trip-per-week limit on "noisy aircraft" trips during the summer season. The laws effectively banned commercial air services from using the Airport.

36. In 2016, the Town laws were struck down on preemption grounds for failure to comply with federal laws regulating noise at "public airport[s]." *Friends of E. Hampton Airport*, 841 F.3d at 151.

37. After its first unsuccessful attempt, the Town resorted to other efforts to free itself from the strictures of federal regulation.

38. As expiration of the Town's commitments under the Grant Assurances approached in September 2021, the Town concocted a plan to temporarily close the Airport and reopen it as a new private use airport that would be free from federal oversight and could allow—or prohibit—future air traffic on whatever terms the Town wished.

39. In January and February 2022, the Town adopted resolutions to deactivate the airport as a public use airport, and reopen the airport as a private use airport.

40. At various Town Board meetings and in correspondence, Airport and community members aired their concerns that shutting down the Airport would have drastic consequences on adjacent communities and other local airports (e.g., Montauk Airport, Westhampton Airport, and the Southampton Village Heliport).

41. Notably, shutting down the Airport would divert additional noise, traffic, and pollution to nearby neighborhoods.

42. Without conducting any State Environmental Quality Review Act ("SEQRA") analysis to fully understanding the adverse impacts of its decision, the Town nonetheless moved forward with its plan to deactivate the Airport and reopen it as a private-use airport.

**E. The Supreme Court permanently enjoins the Town from deactivating or closing the Airport**

43. In reaction to the Town's unlawful efforts to close the Airport, various parties commenced litigation to prohibit the Town from deactivating or closing the airport. *See East End Hangers, et al. v. Town of East Hampton*, Supreme Court, Suffolk County, Index No. 602799/2022; *The Coalition to Keep East Hampton Airport Open, et al. v. Town of East Hampton*, Supreme Court, Suffolk County, Index No. 602801/2022; *Blade Air Mobility, et al. v. Town of East Hampton, et al.*, Supreme Court, Suffolk County, Index No. 602802/2022.

44. The efforts of the aforementioned parties were successful.

45. On May 16, 2022, the Supreme Court entered a Temporary Restraining Order prohibiting the Town and its agents from "closing the Airport, implementing any of the new use restrictions…or otherwise restricting public access to the Airport [] and taking or continuing to take any steps to effectuate the closure of the Airport."

46. On October 19, 2022, the Supreme Court granted petitions enjoining the Town from deactivating or closing the Airport.

47. The Supreme Court granted the petitions, in part, because the Town failed to conduct its Environmental Impact Statement pursuant to SEQRA prior to moving forward with its airport closure plan.

48. Essentially, the Town unlawfully decided to close the airport first, then figure out the potential environmental impacts. Likewise, here the Town should first analyze the potential

environmental impact and effects of only having a single FBO, then determine what if any action is appropriate

49. On March 27, 2024, the Appellate Division, Second Department affirmed the Supreme Court's decision to grant the petition, but modified the language to enjoin the Town from deactivating or closing the airport based on the January and February resolutions. The Court also upheld the application of federal law, namely compliance with the Airport Noise and Capacity Act ("ANCA").

**F. The Town is sanctioned and held in contempt for violating Court orders**

50. Despite Court orders prohibiting the Town from enforcing new use restrictions, the Town flouted the Court orders by enforcing new "rules and regulations for the Airport."

51. Among other things, the new use restrictions implemented by the Town resulted in the following:

- Required planes and helicopters to power down completely before loading and unloading passengers and cargo—resulting in "cooling down" periods of up to 20-30 minutes before re-ignition can take place—effectively doubling the amount of time these aircraft must remain grounded between flights and thereby limiting the total number of flights that can take place in a given period.

- Required aircraft operators to meet new indemnification and insurance requirements covering the Town to receive access to special flight instrument landing procedures.

- Suspended review of aircraft operators' applications to access the special instrument landing procedures needed to use the Airport in inclement weather.

52. These unlawful restrictions implemented by the Town made use of the Airport more costly and infringed on the public's right to access the public Airport.

53. By Order dated May 19, 2023, the Supreme Court sanctioned the Town and found it to be in contempt:

> The Town's actions directly contravene this Court's TRO and deny petitioners the free access to this public Airport that they previously enjoyed. The court's order expressly prohibited even "taking...steps to effectuate the closure of the Airport," much less closing it outright. The Town took numerous steps to effectuate the closure of the Airport, including creating new special instrument procedures that pilots have been required to follow, and which the Town now claims are "irreversible." The Airport is still operating, but subject to the onerous new use restrictions imposed by the Town that directly contravene this Court's TRO.

54. By Order dated March 27, 2024, the Appellate Division, Second Department, affirmed the Supreme Court's finding of contempt:

> Nevertheless, the Supreme Court properly concluded that the respondents/defendants [including the Town] were aware of and violated clear and unequivocal mandates in the TROs by taking other steps to effectuate the closure of the airport and by enforcing new use restrictions. Furthermore, the record established that this conduct defeated, impaired, impeded, or prejudiced the petitioners/plaintiffs' rights or remedies.

**G. The Town Adopts the Resolution**

55. In a continued effort to curtail air traffic in violation of Court orders, the Town is concocting alternative schemes to force the shutdown of the FBO (LIA) that is utilized by HeliFlite.

56. One of these schemes is to terminate LIA's Lease.

57. On January 23, 2024, the Town adopted Resolution RES-2024-196, Resolution Regarding Termination of Lease with Long Island Airlines LLC (Resolution).

58. The Resolution authorized the Town Supervisor "to execute the written notice of termination terminating the Lease."

59. The Resolution further authorized "commence[ment of] eviction proceedings . . . and effectuated eviction of Occupant thereof."

60. The actions authorized by the Resolution are designed to circumvent the Court orders enjoining the Town from deactivating or closing the Airport and "taking other steps to effectuate the closure of the airport and by enforcing new use restrictions."

61. The actions authorized by the Resolution are designed to shutdown the FBO (LIA), the effect of which will negatively impact HeliFlite's operations, its customers, and local businesses in and around East Hampton.

62. Despite federal regulations mandating certain airports have multiple FBOs, the actions authorized by the Resolution impermissibly limits the Airport to having one FBO.

63. Upon information and belief, prior to adopting the Resolution, the Town did not conduct any studies regarding the impact the closure of the FBO (LIA) will have on air traffic at the Airport or on surrounding airports and nearby neighborhoods.

64. Upon information and belief, after adopting the Resolution, the Town did not conduct any studies regarding the impact the closure of the FBO (LIA) will have on air traffic at the Airport or on surrounding airports and nearby neighborhoods.

65. Upon information and belief, the Town has not sought any other entity to overtake FBO (LIA) operations.

66. Absent an FBO servicing the hangar where LIA once served, the private hangar will not be able to be used by air transportation service providers such as HeliFlite.

67. In effect, the Resolution will result in the closure of the hangar at the Airport.

68. The actions authorized by the Resolution will also result in a de facto monopoly because if LIA is shutdown, the Airport will only have one FBO, which deprive air service provides of choice, competitive pricing, and competitive services.

69. Thus, the actions authorized by the Resolution impermissibly limit access to and use of the Airport in violation of multiple Court orders prohibiting the Town from deactivating or closing the airport.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(CPLR Section 7803(3))**

70. Petitioner repeats and re-alleges the allegations of the preceding paragraphs as if set forth fully herein.

71. The Resolution authorizing the Town Supervisor "to execute the written notice of termination terminating the Lease" and "commence eviction proceedings . . . and effectuated eviction of Occupant thereof" must be vacated, annulled, and set aside because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious."

72. The Supreme Court Order enjoined the Town from "deactivating or closing HTO Airport."

73. The Appellate Division Order modified the Order but affirmed the portion that "enjoined the Town from deactivating or closing the airport based on the resolutions in the determination dated January 20, 2023, as amended by the subsequent determination dated February 17, 2022."

74. Despite multiple Court orders enjoining the Town from closing the Airport, the Town Board adopted a resolution that will remove the other FBO (LIA) at the Airport without any plan, study, or assurance that a new FBO will take over.

75. Accordingly, the Resolution violates the Court orders because it effectively shuts down a hangar at the Airport.

76. The Resolution must be declared null and void because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious" by effectuating the closure of the FBO (LIA) in violation of the Court orders.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**(CPLR Section 7803(3))**

77. Petitioner repeats and re-alleges the allegations of the preceding paragraphs as if set forth fully herein.

78. The Resolution authorizing the Town Supervisor "to execute the written notice of termination terminating the Lease" and "commence eviction proceedings . . . and effectuated eviction of Occupant thereof" must be vacated, annulled, and set aside because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious."

79. The Resolution is arbitrary and capricious and discriminatory because it permits other hangars to continue but will shutdown operations at the hangar where LIA served as FBO.

80. The Resolution is arbitrary and capricious and discriminatory because it permits one FBO to remain at the Airport, which will have a disparate impact on aircraft service providers, such as HeliFlite, because it may restrict access to the Airport, and vitiate competitive pricing and services fostered by have multiple FBOs service the Airport.

81. The Resolution is arbitrary and capricious because it will remove the FBO at the Airport without any plan, study, or assurance that a new FBO will take over the private hangar, while another hangar will remain with an existing FBO.

82. Upon information and belief, prior to adopting the Resolution, the Town did not conduct any studies regarding the impact the closure of the FBO will have on air traffic at the Airport or on surrounding airports and nearby neighborhoods.

83. The Resolution must be declared null and void because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious" by effectuating the closure of the FBO (LIA) in violation of the Court orders.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**(CPLR Section 7803(3))**

84. Petitioner repeats and re-alleges the allegations of the preceding paragraphs as if set forth fully herein.

85. The Resolution authorizing the Town Supervisor "to execute the written notice of termination terminating the Lease" and "commence eviction proceedings . . . and effectuated eviction of Occupant thereof" must be vacated, annulled, and set aside because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious."

86. The Resolution was made in violation and is arbitrary and capricious because it permits the Airport to operate with a single FBO.

87. By virtue of reducing the Airport to single FBO, the Town and Town Board are impermissibly granting exclusive rights to the remaining FBO without proper administrative, legal, or lawful authority, and, furthermore, potentially unlawfully limiting air traffic.

88. The actions authorized by the Resolution intended to reduce the Airport to a single FBO violates the multiple Court orders that prohibit the Town from deactivating or closing the Airport.

89. The Resolution must be declared null and void because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious" by effectuating the closure of the FBO (LIA) in violation of the Court orders.

**WHEREFORE**, Petitioner demands judgment be granted as follows:

a. Pursuant to the First Claim for Relief, Judgment in favor of Petitioner pursuant to CPLR § 7806 and CPLR § 7803(3) declaring that the Resolution is vacated, annulled, and set aside because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious" by effectuating the closure of the FBO (LIA) serving the private hangar in violation of the Court orders.

b. Pursuant to the Second Claim for Relief, Judgment in favor of Petitioner pursuant to CPLR § 7806 and CPLR § 7803(3) declaring that the Resolution is vacated, annulled, and set aside because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious" by arbitrarily shutting down the FBO (LIA) but keeping open the other FBO and thereby effectuating the closure of the FBO (LIA) serving the private hangar in violation of the Court orders.

c. Pursuant to the Third Claim for Relief, Judgment in favor of Petitioner pursuant to CPLR § 7806 and CPLR § 7803(3) declaring that the Resolution is vacated, annulled, and set aside because it "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious" by shutting down LIA as an FBO and limiting the Airport to single FBO thereby effectuating the closure of the FBO (LIA) serving the private hangar in violation of the Court orders.

d. Such other further and different relief this Court deems just, equitable, and proper.

Dated: Ronkonkoma, New York
May 22, 2024

**CAMPOLO, MIDDLETON**
**& McCORMICK, LLP**

By: Scott D. Middleton, Esq.
*Attorneys for Petitioner*
4175 Veterans Memorial Hwy., Suite 400
Ronkonkoma, New York 11779
(631) 738-9100

TO: TOWN OF EAST HAMPTON
159 Pantigo Road
East Hampton, New York 11937

TOWN BOARD OF TOWN OF EAST HAMPTON
159 Pantigo Road
East Hampton, New York 11937

Robert Connelly, Esq.
Town Attorney
159 Pantigo Road
East Hampton, New York 11937

**VERIFICATION**

STATE OF NEW YORK )
ss.:
COUNTY OF SUFFOLK )

The undersigned, an attorney admitted to practice in the Courts of the State of New York, states, that affirmant is a member of the firm of CAMPOLO, MIDDLETON & McCORMICK, LLP, the attorneys for the Petitioner, HELIFLITE SHARES L.L.C, that affirmant has read the foregoing Verified Complaint and knows the contents thereof, and that the same is true to the affirmant's knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters affirmant believes to be true.

That the reason this Verification is made by affirmant and not by the defendant is because the defendant's place of business is located outside the County wherein affirmant's office is located and that the source of affirmant's knowledge and the grounds of belief as to those matters therein stated to be alleged on information and belief are correspondence and investigations which have been made concerning the subject matter in this action, and which are in the possession of the said attorneys.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated: Ronkonkoma, New York
May 22, 2024

SCOTT D. MIDDLETON, ESQ.