**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax

**Randy M. Mastro**
*Partner*

randy.mastro@dechert.com
+1 212 641 5619 Direct
+1 212 698 3599 Fax

October 29, 2026

**VIA ECF**

Hon. Joan M. Azrack
United States District Court Judge
United States District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**Re: *HeliFlite Shares, LLC v. Town of East Hampton, et al.*, No. 2:26-cv-06936 (JMA) (SIL)**

Dear Judge Azrack:

I write in brief reply to the Town's letter of today (ECF No. 11) opposing HeliFlite's TRO application. The Town conflates prior landlord-tenant disputes in state court with the federal question here: whether it may restrict HeliFlite's covered aircraft operations without complying with the Airport Noise and Capacity Act ("ANCA") and the FAA's implementing regulations, which is a question of federal law never before addressed by any court and a matter of federal preemption.

While both LIA and HeliFlite have litigated issues in state court related to the Town's termination of LIA's lease to oversee the Airport's Executive Terminal—one of only two terminals at this Airport that the Town's letter leaves no doubt it intends to close, without any prior FAA approval—those state court landlord-tenant determinations have nothing to do with the independent, meritorious federal ANCA/Part 161 claims here, which, while referenced, were never adjudicated to resolution there. *See* Town Ex. 1 at 25–28, 30; Town Ex. 6 ¶ 1 & prayer for relief. This Court can therefore enforce these independent federal obligations, regardless of the state court's lease determinations. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292–93 (2005).

Part 161 encompasses covered restrictions and requires notice and analysis at least 180 days before a covered Stage 2 restriction takes effect. 14 C.F.R. §§ 161.5, 161.203(a). Proprietary authority does not excuse noncompliance. *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143–52 (2d Cir. 2016). Terminal-allocation measures are appropriate in managing airport operations. *See Delux Public Charter, LLC v. County of Westchester*, No. 24-1895-cv, § I (2d Cir. Aug. 26, 2025) (summary order). But whatever LIA's FBO lease status at the Executive Terminal, an open runway cannot replace HeliFlite's parking, passenger handling, and after-hours ground services. Carlson Decl. ¶¶ 11–14, 41–42, 51.

FAA decisions on this topic make this very distinction. In *Smith v. Okaloosa County, Florida*, FAA Docket No. 16-24-01, Director's Determination at 17–20 (Mar. 20, 2025), the FAA expressly found, as here, that lease transactions concentrating two FBO locations in one operator without

alternative space violated federal obligations. By contrast, in *Mansfield Heliflight, Inc. v. City of Burlington, Vermont*, FAA Docket No. 16-14-06, Director's Determination at 23, 26–29 (Sept. 5, 2017), *aff'd*, Final Agency Decision (June 22, 2018), the FAA found no violation where the sponsor offered development space and engaged with an applicant that failed to provide a clear business plan. Here, under the guise of offering to "consider" HeliFlite's FBO proposal in the future, the Town flatly rejected it; yet in its letter of today, the Town insists on eviction without an operating replacement or equivalent accommodation for HeliFlite. ECF No. 11 at 3; Carlson Decl. ¶¶ 14, 47–48, 51 & Ex. 6 at 2. Offering to "consider" future alternatives does not preserve HeliFlite's operations, capacity, and after-hours services now threatened. Pl. Mem. 17–18, 22–23. Federal access obligations are distinct from landlord-tenant rights. As the FAA explained in *Smith*: "Airport sponsors may not enter into a lease agreement which results in exclusive use, discrimination at the airport, or deprive the sponsor of its rights and powers." Director's Determination at 20. Part 161 likewise defines noise or access restrictions to include "restrictions (including but not limited to provisions of ordinances and leases) affecting access or noise that affect the operations of Stage 2 or Stage 3 aircraft." 14 C.F.R. § 161.5; *see* Pl. Mem. 16. The Town therefore should have gone to the FAA for its prior approval before implementing such drastic restrictions in access to this public airport. But it did not. As a result, this Court can enforce ANCA and Part 161 against covered access restrictions imposed without following required prerequisite procedures. *Friends*, 841 F.3d at 143–52.

The Town's misplaced reference to the Anti-Injunction Act, 28 U.S.C. § 2283, has no application whatsoever here. That law does not bar adjudication of independent federal claims. Moreover, the relief sought here would not enjoin any state proceedings in any way. HeliFlite seeks only protection of its operational access to the Airport, and it seeks emergency relief only against Town officials requiring the Town not to alter HeliFlite's operations during this interim period, not vacatur of the warrant against LIA that resulted from the state court litigation.

To be clear, the Town has grossly misrepresented the record here. LIA has long been the FBO at the Executive Terminal. It is no shell, and it is no alter ego of HeliFlite, which is one of multiple subtenants at the Executive Terminal adversely affected by the Town's actions here eliminating one of two terminals and curtailing hours of operation and services at the other, achieving through the back door what it was enjoined several years ago from doing— trying to take this public airport private while limiting its access to preferred operators, all in violation of federal law. And the Town is no victim here. HeliFlite has not only consistently tendered rent that the Town has been returning; it offered to invest up to $1.8M for improvements and repairs there to be able to continue to operate out of the Executive Terminal, but the Town, hell bent on closing it, turned HeliFlite down. And the Town now admits it is intent on enforcing an eviction warrant against LIA in which it intends to ensnare HeliFlite over the entirety of the Airport. But even if permitted limited access—which the Town is not committing to do and, therefore, a TRO is necessary—one open runway is not the same as useable access and functionally amounts to exclusion.

DECHERT



Finally, the Town confirms the immediate threat of irreparable harm here by referring itself to yesterday as the "eviction date." ECF No. 11 at 3. Eviction before HeliFlite's independent, meritorious federal claims can be heard threatens more than lost-flight revenue or possession of commercial space. Airport access is integral to its business model and service to HeliFlite customers and fractional owners; interruption threatens lasting injury to business reputation, customer relationships, and goodwill. Carlson Decl. ¶¶ 5, 9, 11, 51–59. Such injury is irreparable. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37–38 (2d Cir. 1995); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010). We therefore respectfully request a TRO to maintain the *status quo*, preserving HeliFlite's operational access at the East Hampton Town Airport while this OTSC application is pending.

Respectfully,

*/s/ Randy M. Mastro*

Randy M. Mastro